## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOSE MENDEZ                                        CIVIL ACTION

VERSUS                                             NO.  18-2728

W. SANDY MCCAIN, WARDEN                            SECTION "G"(2)

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Jose Mendez, is incarcerated in the Elyan Correctional Center in St. Gabriel, Louisiana.[2]  On January 17, 2012,  Mendez and co-defendant Kenneth Yokum were charged by bill of information in Jefferson Parish with possession of 28 to 200 grams of cocaine in violation of La. Rev. Stat. § 40:967(F) and possession of Viagra without a prescription in violation of La. Rev. Stat. § 40:1238.12.[3]

On January 31, 2012, Mendez, through counsel, filed omnibus motions, including a motion to suppress the evidence.[4]  On November 15, 2012, a hearing was held on the motion to suppress after which the state trial court denied the motion.[5]  On March 1, 2013, Mendez filed a motion to continue the trial to locate a witness, which was denied by the state trial court on March 11, 2013.[6]  On March 4, 2013, defense counsel filed a motion for disclosure of the identity of a confidential informant, which the state trial court denied.[7]

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 1/17/12.  Yokum was only charged in count one.

[4]St. Rec. Vol. 1 of 6, Omnibus Motions and Order for Pre-Trial Motions, 1/31/12; Motion to Suppress the Evidence, 1/31/12.

[5]St. Rec. Vol. 1 of 6, Minute Entry, 11/15/12; St. Rec. Vol. 3 of 6, Hearing Transcript, 11/15/12.

[6]St. Rec. Vol. 1 of 6, Motion to Continue Trial, 3/1/13; State's Objection to Defendant's Motion to Continue, 3/1/13; Minute Entry, 3/11/13; Motion for New Trial and For Post-Verdict Judgment of Acquittal, 3/27/13.

[7]St. Rec. Vol. 1 of 6, Motion for Disclosure of the Identity of the Confidential Informant, 3/4/13; St. Rec. Vol. 3 of 6, Order, 11/30/15.

The Louisiana Fifth Circuit Court of Appeal summarized the facts determined at trial in relevant part as follows:

> In November of 2011, Detectives Julio Alvarado and Donald Clogher of the Jefferson Parish Sheriff's Office were participating in a narcotics investigation of defendant. The officers conducted a three-day surveillance, during which they determined defendant resided on 17th Street in Gretna and drove a black Dodge Ram pickup truck, which was registered in his name. Over these three days, the officers observed defendant driving the truck by himself, except for one occasion in which they observed a female passenger with him. This female passenger was determined to be defendant's girlfriend, Toni Stein.[1]
>
> [1]Ms. Stein is referred to as both "Toni" and "Terri" throughout the record. Defendant's pro se brief refers to her as "Toni." For the sake of consistency, this opinion refers to her as "Toni."
>
> At the conclusion of this surveillance, search warrants were obtained for defendant's residence and vehicle. The officers then conducted another period of surveillance over eight days. On the eighth day of this surveillance, December 9, 2011, the officers observed defendant leave his residence on 17th Street in his black pickup truck and proceed to a residence located at 1715 Huey P. Long Avenue in Gretna. Defendant entered this residence and exited five or ten minutes later. He proceeded up the street to a closed gas station at 1624 Huey P. Long Avenue. He entered the gas station empty-handed and exited two minutes later with a white package. From here, defendant returned to the residence at 1715 Huey P. Long Avenue and exited after five minutes. He got back into his vehicle, drove onto the elevated West Bank Expressway, and proceeded across the river into Metairie. Based on their belief that defendant was gathering and transporting illegal narcotics, the officers initiated a traffic stop of defendant on Interstate 10 near Clearview Parkway in order to execute the search warrant that had been issued for his vehicle.
>
> Upon making contact with defendant, Detective Alvarado observed him to be visibly nervous. The detective informed defendant of the narcotics investigation and that he had a search warrant for his vehicle. After advising defendant of his Miranda[2] rights in both English and in Spanish, Detective Alvarado asked defendant where he had been that day, to which defendant replied that he had only been at his residence. The detective knew this to be false based upon the surveillance of defendant earlier that day. The detective inquired as to where defendant was going. Defendant stated that he was going to his son's house, but was unable to provide an address. Defendant was then handcuffed and detained in the police vehicle.
>
> [2]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A search of the vehicle turned up 56.9 grams of cocaine,[3] 16 Viagra pills, three Boost Mobile cell phones,[4] and several loose keys. A subsequent search of defendant's person revealed approximately $1,600.00 in cash. Defendant did not deny that the cocaine or the Viagra were his; nor did he have, or claim to have, a prescription for the Viagra.

[3]Detective Alvarado's testimony, as well as the return on the search warrant, indicates that the gross weight of the cocaine seized from defendant's truck was 56.9 grams. The scientific analysis report shows that the net weight of the cocaine was 55 grams.

[4]Detective Alvarado explained that drug dealers tend to have more than one cell phone and that Boost Mobile phones allow the user to remain anonymous.

While Detective Alvarado transported defendant to the detective bureau, Detective Clogher participated in the effort to locate defendant's "stash" house. Detective Clogher explained that "more elaborate" narcotics dealers, in an effort to separate their narcotics dealings from their personal lives, store, or "stash," narcotics and proceeds therefrom in a separate location. Detective Clogher proceeded to the gas station at 1624 Huey P. Long Avenue where defendant was seen earlier that day. Upon the officers' arrival, they were approached by Kenneth Yokum, who identified himself as the owner of the property. Detective Clogher obtained consent from Mr. Yokum to search the property, but no narcotics were found.

The officers then proceeded to defendant's residence on 17th Street and executed the search warrant they had previously obtained. No contraband was found at defendant's residence. While there, the officers also encountered and questioned Toni Stein, who initially provided the officers with several false names. Ms. Stein told the officers that defendant dealt cocaine and informed the officers of where he hid cocaine in his truck. In addition, Ms. Stein informed the officers that defendant stored cocaine in a black lockbox which he kept at a residence located at 1715 Huey P. Long Avenue.

As a result of the information obtained from Ms. Stein, the officers went to 1715 Huey P. Long Avenue, where Detective Clogher again encountered Mr. Yokum, who identified himself as a resident of the property. The detective obtained consent to search the residence, which turned up nothing. The officers also searched the backyard and discovered a black lockbox hidden under a deck by an above-ground pool. Utilizing a key found in defendant's possession, the officers opened the lockbox to reveal approximately 69 grams of cocaine,[5] $1,263.00 in cash, and Louisiana brake tags.

Following the seizure of these items, Mr. Yokum was transported to the detective bureau where, with a rights of arrestee form, he was advised of his Miranda rights. Mr. Yokum indicated that he understood his rights, waived them, and provided a recorded statement. In his statement, Mr. Yokum acknowledged that he allowed defendant to store the lockbox at his house but explained that he

thought defendant only stored money in it. Further, Mr. Yokum asserted that defendant was at his house earlier that day and walked into the backyard. Mr. Yokum also admitted that he had seen defendant in possession of cocaine in the past. Mr. Yokum was subsequently placed under arrest and charged with possession of cocaine.

State v. Mendez, No. 13–KA–909, 140 So. 3d 284, 1082-1084 (La. App. 5th Cir. April 23, 2014); State Record Volume 4 of 6, Louisiana Fifth Circuit Court of Appeal Opinion, 13-KA-909, pages 3-6, April 23, 2014.

After severance for separate proceedings against Yokum, Mendez was tried before a jury on March 12 and 13, 2013 and found guilty of both counts.[8] On March 27, 2013, Mendez filed a motion for new trial and post-verdict judgment of acquittal.[9] On April 1, 2013, the state trial court denied the motion and sentenced Mendez to 20 years in prison on each count to be served at hard labor and to run consecutively with his sentence for probation violation.[10] On April 3, 2013, the state trial court vacated the sentence and sentenced petitioner to 20 years in prison as to count one and five years as to count two,

---

[8] St. Rec. Vol. 1 of 6, Motion to Sever, 3/11/13; Trial Minutes, 3/12/13; Trial Minutes, 3/13/13; Jury Verdict, 3/13/13; St. Rec. Vol. 4 of 6, Trial Transcript, 3/13/13.

[9] St. Rec. Vol. 1 of 6, Motion for New Trial and for Post-Verdict Judgment of Acquittal, 3/27/13.

[10] St. Rec. Vol. 1 of 6, Sentencing Minutes, 4/1/13; Commitment, 4/1/13; St. Rec. Vol. 4 of 6, Sentencing Transcript, 4/1/13.

both sentences to be served at hard labor and concurrently.[11]  The state trial court denied Mendez's motion to reconsider sentence.[12]

On May 28, 2013, the state filed a multiple offender bill to which Mendez pled guilty.[13]  The state trial court vacated the previous sentence as to count one and sentenced Mendez as a second felony offender to serve a term of 25 years in prison at hard labor without the benefit of probation or suspension of sentence.[14]

On direct appeal to the Louisiana Fifth Circuit, Mendez's appellate counsel filed a brief which included a request for an errors patent review, a motion to withdraw as Mendez's counsel, and a statement indicating that counsel had found no non-frivolous appealable issue in connection with Mendez's conviction, all pursuant to Anders v. California, 386 U.S. 738 (1967), and related state case law.[15]  Mendez filed a pro se brief asserting three errors[16]: (1) The hearsay statements of Toni Stein and Kenneth Yokum were unreliable and insufficient evidence supported his convictions.  (2)  The state trial

---

[11]St. Rec. Vol. 1 of 6, Sentencing Minutes, 4/3/13; Commitment, 4/3/13; St. Rec. Vol. 5 of 6, Sentencing Transcript, 4/3/13.

[12]St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 4/29/13; Minute Entry, 1/6/14.

[13]St. Rec. Vol. 1 of 6, Multiple Bill  of Information, 5/28/13; Multiple Bill Hearing Minutes, 5/28/13; St. Rec. Vol. 3 of 6, Waiver of Rights - Plea of Guilty, 5/28/13; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 5/28/13.

[14]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 5/28/13; Commitment, 5/28/13; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 5/28/13.

[15]St. Rec. Vol. 4 of 6, Appellant Brief, 2013-KA-909, 12/2/13.

[16]St. Rec. Vol. 4 of 6, Pro Se Brief, 13-KA-909, 1/30/14 (dated 1/23/14).

court erred when it allowed the hearsay statements of Toni Stein and Kenneth Yokum to be admitted into evidence in violation of his Confrontation Clause right. (3) The trial court erred in failing to provide him with an interpreter. On April 23, 2014, the Louisiana Fifth Circuit affirmed the convictions and sentences, finding that there were no non-frivolous issues for appeal, Mendez's pro se Confrontation Clause claim was procedurally barred due to his trial counsel's failure to object contemporaneously and all of his claims were without merit, but amended the sentence to delete a $50,000 fine.[17]

The Louisiana Supreme Court denied Mendez's subsequent writ application without stated reasons on January 9, 2015.[18] Mendez's conviction became final 90 days later, on April 9, 2015, when the time expired for Mendez to file a petition for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir.2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200–01 (5th Cir.1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir.1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup.Ct. R. 13(1).

---

[17] State v. Mendez, 140 So. 3d 284, 289-292 (La. App. 5th Cir. April 2014); St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 13–KA–909, 4/23/14.

[18] State v. Mendez, 157 So. 3d 596 (La. 2015); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2014–KO–1085, 1/9/15; St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 14 KO 1085, 5/27/14 (dated 5/20/14).

On July 17, 2015, Mendez submitted an application to the state trial court for post-conviction relief, asserting the following claims:[19]  (1) The affidavit in support of the search warrant was unreliable and resulted in an illegal search and seizure.  (2) His trial counsel provided ineffective assistance for failing to (a) properly prepare for trial; (b) interview and subpoena witnesses; (c) adequately move for a continuance of trial and seek writs and move for a stay when a continuance was denied; (d) move to compel the disclosure of the informant and contest false statements made in the application underlying the search warrants during the suppression hearing; (e) discuss the options available to contest the multiple offender bill, object to the unconstitutional predicate offense at the multiple offender hearing and require sufficient proof for an adjudication of guilt.  (3) His appellate counsel provided ineffective assistance for failing to assert claims relating to the multiple offender proceedings, including ineffective assistance of counsel at the proceedings, and the falsity of statements contained in the affidavit in support of the search warrants.  (4) The state trial court violated his confrontation and compulsory process rights when it failed to order disclosure of the identity of the confidential informant.  (5) His plea to a predicate offense of the multiple offender bill was not knowing and voluntary.  On August 19, 2015, the state trial court denied the application as it related to Mendez's claims related to the multiple offender proceedings,

_____

[19]St. Record Vol. 2 of 6, Uniform Application for Post-Conviction Relief and Brief in Support, 7/23/15 (dated 7/17/15).

including his claims of ineffective assistance of counsel, finding the claims procedurally barred under La. Code Crim P. art. 930.3, State ex rel. Melinie v. State, 665 So. 2d 1172 (La. 1996) and State v. Hebreard, 708 So. 2d 1291(La. App. 4th Cir. 1998).[20]  After the State filed a response and Mendez filed a traverse, the state trial court denied the remaining claims on November 30, 2015, finding Mendez's claims relating to illegal search and seizure and the failure to disclose the identity of the confidential informant procedurally barred and, alternatively, without merit; his claims of ineffective assistance of counsel speculative and conclusory; and that he failed to prove any deficiency in counsel's performance or resulting prejudice.[21]

The Louisiana Fifth Circuit denied Mendez's subsequent writ application, finding no error in the district court ruling on April 20, 2016.[22]  On September 6, 2017, the Louisiana Supreme Court denied Mendez's related writ application finding Mendez failed to establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), or any error by the lower courts in their analysis of the remaining claims.[23]

---

[20]St. Rec. Vol. 2 of 6,Trial Court Order, 8/19/15.

[21]St. Rec. Vol. 2 of 6, State's Response to Post-Conviction Relief,9/14/15; Traverse to State's Response to Post-Conviction Relief, 9/22/15 (dated 9/11/15); Trial Court Order, 11/30/15.

[22]St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 16-KH-103, 4/20/16; St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 2015-KH-385, 6/16/15 (dated 6/4/15).

[23]State ex. rel Mendez v. State, 226 So. 3d 1088 (La. 2017) (per curiam); St. Rec. Vol. 2 of 6, La. S. Ct. Order, 2016-KH-0962, 9/22/17; La. S. Ct. Writ Application, 16 KH 962, 5/19/16; Motion for

In the interim, Mendez filed a motion to correct illegal sentence and set aside his guilty plea, claiming that he had not been advised of his <u>Boykin</u> rights before pleading guilty to the habitual offender bill.[24]  On August 22, 2016, the state trial court denied the motion.[25]  Mendez sought writs from the state Fifth Circuit,[26] which denied Mendez's application on November 2, 2016.[27]

## II.    FEDERAL HABEAS PETITION

On March 11, 2018, Mendez filed his petition for federal habeas corpus relief in which he asserts the following grounds for relief:[28]  (1) The state trial court erred in admitting evidence of "other crimes."  (2) The state trial court erred in allowing Detective Clogher to testify regarding statements made by Yokum and Stein in violation of petitioner's right to confrontation under <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  (3) The state trial court erred in denying disclosure of the identify of the confidential informant and the affidavit in support of the search warrants contained materially false statements resulting in an illegal search and seizure.  (4) His multiple offender proceedings were defective.  (5) Both trial and appellate

---

Leave to Supplement, 16 KH 962, 11/21/16 (dated 11/8/16).

[24]St. Rec. Vol. 2 of 6, Motion to Correct Illegal Sentence and Set Aside Guilty Plea, 8/16/16.

[25]St. Rec. Vol. 1of 6, Order, 8/22/16.

[26]St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 16-KH-624, 10/23/16.

[27]St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 16-KH-624, 11/2/16.

[28]Rec. Doc. No. 3.

counsel provided ineffective assistance in that trial counsel: (a) "failed to investigate available defenses prior to taking adverse actions without notice" which resulted in forfeiture of his right to have claims heard on direct appeal; (b) failed to investigate the underlying conviction for purposes of the multiple offender adjudication and; (c) appellate counsel failed to assert available issues on appeal.  (6)  The state trial court erred in failing to appoint counsel for his post-conviction review.

The State filed an answer in response to Mendez's petition in which it concedes that the federal petition is timely.[29]  The State claims that Mendez's failed to exhaust his claim relating to the admission of "other crimes" evidence and that the claim is technically procedurally barred.  It argues that Mendez's Confrontation Clause claim and claims related to the identity of the confidential informant, the affidavit in support of the search warrants and the multiple offender proceedings, including the ineffective assistance of trial counsel claim related to the multiple offender proceedings, are procedurally defaulted.  It alternatively claims that the "other crimes" evidence and illegal search and seizure claims are non-cognizable on habeas review.  It contends that Mendez's Confrontation Clause and remaining ineffective assistance of counsel claims lack merit and that the denial of relief by the state courts was not contrary to, or an unreasonable application of, federal law.

---

[29]Rec. Doc. No. 15 at p.5.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[30] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Mendez's petition, which, for reasons discussed below, is deemed filed in a federal court on March 11, 2018.[31]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State concedes and I find that Mendez's

---

[30]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[31]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk filed Mendez's deficient petition on March 14, 2018. The corrected petition was entered April 9, 2018 after petitioner requested pauper status. Mendez's signature on the original petition is dated March 11, 2018, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court.

petition was timely filed.  The State has asserted the defense of procedural default based on the presentation and disposition of some his claims in the state courts.

## IV.    EXHAUSTION DOCTRINE AND PROCEDURAL DEFAULT

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."  Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."  Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  Whitehead, 157 F.3d at

387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

A.   FAILURE TO EXHAUST

To exhaust review of his claims in the state courts, Mendez must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through the Louisiana Supreme Court in a procedurally proper manner and have given all appropriate state courts an opportunity to address each of his claims, either on direct appeal or in post-conviction proceedings through the Louisiana Supreme Court. In this case, the State concedes and I find that Mendez has exhausted state court review of some of his claims. However, for the following reasons, Mendez has defaulted any review of his claim of wrongful admission of "other crimes " evidence and that claim is considered technically exhausted.

Mendez claims that the state did not comply with the requirements of State v. Prieur, 277 So. 2d 126 (La. 1973)[32] and La. Code Evid. art. 404(B) in using "other crimes" evidence against him.  The record demonstrates that he failed to present this claim to any state court on either direct appeal, in his application for post-conviction relief or in his related writ applications filed in the Louisiana Fifth Circuit and Louisiana Supreme Court.  Because Mendez did not present this claim to any state court, his claim was not exhausted in a procedurally proper manner.

B.    NO REMAINING OPPORTUNITY TO EXHAUST

Mendez has not allowed the state courts one full opportunity to review his claim related to the admission of "other crimes" evidence through the Louisiana Supreme Court in a procedurally proper manner.  The burden is on petitioner to assert his federal claim in the state courts at a time when state procedural law permits its consideration on the merits.  Bell v. Cone, 543 U.S. 447, 451 n.3 (2005) (citing Baldwin, 541 U.S. at 30-32).  Thus, when a petitioner has failed to exhaust state court remedies and the state court to which the petitioner would be required to present his claims would now find the claims procedurally barred, the claims are procedurally defaulted for purposes of federal habeas

---

[32]See generally State v. Prieur, 277 So. 2d 126 (La.1973) (hearing conducted to determine admissibility of evidence of defendant's other acts of misconduct when such acts are allegedly offered not to show defendant's bad character, but to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or connection to conduct integral to the act which is the subject of the trial).

review and must be dismissed.  Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

The record in this case reflects that Mendez is now unable to litigate his unexhausted claim in the Louisiana courts.  The Louisiana Supreme Court has already advised Mendez that he no longer has available post-conviction remedies:

> Relator has now fully litigated his application for post-conviction relief in state court.  Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8.  Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory.  Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final.  Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review.  The district court is ordered to record a minute entry consistent with this per curiam.

State ex rel. Mendez v. State, 226 So. 3d 1088 (La. Sept. 22, 2017) (per curiam); State Court Record Volume 2 of 6, Louisiana Supreme Court Order, 16-KH-0962, September 22, 2017.

Mendez therefore no longer has the opportunity to present his unexhausted claim in the state courts.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion, because there are no state remedies any longer "available" to him.  Gray v. Netherland, 518 U.S. 152, 161-162 (1996); see 28 U.S.C. § 2254(b); Coleman, 501 U.S. at 732 (citing Engle v. Isaac, 456 U.S. 107,

125-126, n.28 (1982)).    The United States Supreme Court has determined that the exhaustion requirement "'refers only to remedies still <u>available</u> at the time of the federal petition,' [and] it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" (emphasis added, citations omitted) <u>Gray</u>, 518 U.S. at 161-62 (quoting <u>Engle</u>, 456 U.S. at 125 n.28, and <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989)).

    I therefore find that state court review of Mendez's unexhausted claim is technically exhausted, and the claim must be evaluated for procedural default.  <u>See</u> <u>Gray</u>, 518 U.S. at 162 ("... the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim ..."); <u>Coleman</u>, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas....").

    The procedural bar created by a petitioner's technical exhaustion stands as an adequate and independent state procedural ground and prevents federal habeas corpus review of a defaulted claim.  <u>Gray</u>, 518 U.S. at 162; <u>see also</u>, <u>Coleman</u>, 501 U.S. at 735 n.1; <u>Beazley v. Johnson</u>, 242 F.3d 248, 264 (5th Cir. 2001).  In the interest of judicial

economy, I will address the procedural bar to this and Mendez's other defaulted claims in the following section of this report.

V.    PROCEDURAL DEFAULT

In addition to the unexhausted claim, the state courts imposed a procedural bar to three of Mendez's other claims. Specifically, in his second federal habeas claim, Mendez asserts that the trial court erred in allowing the introduction of hearsay by Stein and Yokum in violation of his right to confrontation. In his third federal habeas claim, Mendez asserts that the state trial court erred in failing to order disclosure of the identify of the confidential informant and that the affidavit in support of the search warrants contained materially false statements resulting in an illegal search and seizure. In his fourth claim, Mendez challenges his multiple offender sentence and claims that he was provided ineffective assistance of trial counsel in the multiple offender proceedings.

In addressing his Confrontation Clause claim relating to the hearsay statements of Stein and Yokum on direct appeal, the Louisiana Fifth Circuit found that counsel failed to object to the testimony and therefore consideration of the claim was precluded, citing State v. Taylor, 887 So. 2d 589, 595 (La. App. 5th Cir. 2004). Alternatively, the state appellate court found that, even if the argument had been properly preserved for review, it was meritless. Because the Louisiana Supreme Court rejected Mendez's direct appeal without reasons, this court will presume that it relied upon the same grounds as the last reasoned state court opinion. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (when the

18

last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

In his post-conviction proceedings, both the state trial court and the state Fifth Circuit found Mendez's claims relating to the identity of the confidential informant and the affidavit in support of the search warrants procedurally barred under La. Code Crim. P. art. 930.4(C) for failure to raise the issues on direct appeal. The courts alternatively found the claims meritless. The state trial court found Mendez's challenge to the habitual offender proceedings, including his claim of ineffective assistance of trial counsel during those proceedings, non-cognizable on post-conviction review under La. Code Crim. P. art. 930.3, State ex rel. Melinie, 665 So. 2d 1172 (La. 1996) and State v. Hebreard, 708 So. 2d 1292 (La. App. 4th Cir. 1998). The Fifth Circuit found that the claim was not cognizable on post-conviction review and that it had been addressed on direct appeal. In reviewing the claims, the Louisiana Supreme Court found no error in the lower courts and adopted the state trial court's findings as its own.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Coleman, 501 U.S. at 731–32; Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).

19

This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  However, the "State need not explicitly apply [a] procedural bar 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred [under state law].'"  Beazley, 242 F.3d at 264 (quoting Coleman, 501 U.S. at 735 n.1). The procedural bars also prevail over any alternative discussion of the merits of the claim by a state court.  See Robinson v. Louisiana, 606 F. App'x 199, 204 (5th Cir. 2015) (citing Woodfox v. Cain, 609 F.3d 774, 796 (5th Cir. 2010)).  In this case, the procedural rules bar review of Mendez's federal habeas claims.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  The United States

Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Walker v. Martin, 562 U.S. 307, 316 (2011); Glover, 128 F.3d at 902. A state procedural rule "can be 'firmly established' and 'regularly followed,'—even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Beard v. Kindler, 558 U.S. 53, 60–61 (2009) (citation omitted). The question of the adequacy of a state procedural bar is itself a federal question. Beard, 558 U.S. at 60 (citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).

As mentioned previously, ". . . the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim . . . ." Gray, 518 U.S. at 162. Thus, Mendez's failure to exhaust state court review of federal habeas claim one is independent and adequate to prevent review in this federal court.

The Louisiana Fifth Circuit found Mendez's second claim was not properly preserved for review due to counsel's failure to object to the introduction of the statements, citing Louisiana law restricting appellate review to those objections and grounds presented to the state trial court. See State v. Taylor, 887 So. 2d 589, 595 (La.

21

App. 5th Cir. 2004). It is well settled that this type of "contemporaneous objection" rule is an "independent and adequate" state procedural ground which bars federal habeas corpus review. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The reason for the state courts' dismissal of Mendez's claim, therefore, was independent of federal law and relied strictly on state procedural requirements. <u>See</u> <u>Harris</u>, 489 U.S. at 263, 109 S.Ct. 1038.

It is well settled and regularly enforced in Louisiana law that a criminal defendant is limited on appeal to those grounds for an objection that were articulated at trial. <u>See</u> <u>e.g.</u>, <u>Taylor</u>, 887 So. 2d at 594-595; <u>State v. Torregano</u>, 875 So. 2d 842 (La. App. 5th Cir. 2004); <u>State v. West</u>, 419 So. 2d 868 (La. 1982); <u>State v. Provo</u>, 396 So. 2d 1298 (La. 1981); <u>State v. Johnson</u>, 389 So. 2d 372 (La. 1980). Therefore, the failure to preserve a claim, including under La. Code Crim. P. art. 841, provides adequate state grounds to bar review by the federal courts in a habeas corpus proceeding. <u>See</u> <u>Proctor v. Butler</u>, 831 F.2d 1251, 1253 (5th Cir. 1987). The same is true in this case.

The Louisiana Fifth Circuit found Mendez's third claim as it relates to the identity of the confidential informant and the affidavit in support of the search warrants was not properly preserved for review under La. Code Crim. P. art. 930.4  The last reasoned decision on these issues was the judgment of the Louisiana Supreme Court which adopted the reasons of the state trial court, specifically citing La. Code Crim. P. art. 930.4 (C) to bar review of these claims. Under the circumstances of this case, Article 930.4(C)

is independent and adequate to bar federal review of this claim.  Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is an independent and adequate state procedural rule); Johnson v. Cain, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.4(C)); Perez v. Cain, No. 12-1331, 2012 WL 4815611, at *1 (E.D. La. Oct. 10, 2012) (Barbier, J.) (Article 930.4(C)); Thomas v. Cain, No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (Article 930.4(B)); Simmons v. Cain, No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (Article 930.4(B) and (C)); Washington v. Cain, No. 98-0584, 2000 WL 863980 (E.D. La. June 27, 2000) (Duplantier, J.) (Article 930.4(B)); see also, Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.

Finally, the Louisiana Supreme Court, adopting the state trial court's reasons, imposed the bar to post-conviction review of Mendez's claims related to the multiple offender proceedings pursuant to La. Code Crim. P. art. 930.3 and State ex rel. Melinie. Article 930.3 sets out permissible grounds on which a defendant can seek post-conviction relief.  In State ex rel. Melinie, the Louisiana Supreme Court, relying on Article 930.3, ruled that claims of errors in sentencing, including claims of ineffective assistance of counsel during multiple offender proceedings, should be asserted on direct appeal and are not proper grounds for post-conviction relief.

This court has repeatedly held that La. Code Crim. P. art. 930.3 and State ex rel. Melinie are independent and adequate state grounds for dismissal barring federal habeas

corpus review.  See, e.g., Hull v. Stalder, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Table, Text in Westlaw) (recognizing Art. 930.3 and Melinie to be independent and adequate state grounds); Johnson v. Cain, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.3, Melinie are independent and adequate); Evans v. Cain, No. 11-2584, 2012 WL 2565008, at *6-7 (E.D. La. Mar. 14, 2012), report and recommendation adopted by, 2012 WL 2565001, at *1 (E.D. La. Jul. 2, 2012); Neal v. Kaylo, No. 01-2211, 2001 WL 1195879, at *1 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Article 930.3 and Melinie are independent and adequate); Leonard v. Hubert, No. 00-0511, 2001 WL 333123, at *1 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); Marshall v. Hubert, No. 00-0334, 2000 WL 1059820, at *1 (E.D. La. July 31, 2000) (Duval, J.) (same); Ardis v. Cain, No. 99-1862, 1999 WL 997497, at *1 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (same).  Similarly, I find that the bar imposed under Article 930.3 and State ex rel. Melinie is an independent and adequate bar to review of the merits of Mendez claim challenging his multiple offender sentence, including his claim of ineffective assistance of counsel during the proceeding.

The state courts' rulings, therefore, were based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for appellate review. See Fisher, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue).  The state courts' reasons for dismissal of Mendez's claims of improper admission of hearsay evidence in violation of his right to confrontation,

failure to disclose the identity of the confidential informant, that the affidavit in support of the search warrants contained material false statements and his challenges to his multiple offender sentence, including his claims of ineffective assistance of counsel during the proceeding, were therefore independent of federal law and adequate to bar review of his claims in this court.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." Fisher, 169 F.3d at 301 (citing Coleman, 501 U.S. at 748–50); Amos, 61 F.3d at 338–39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id. at 486.

Mendez did not file a traverse and he does not specifically address his procedural default in his brief in support of his habeas petition. Construed broadly, his written

25

submissions appear to attribute the procedural default of his claims to ineffective assistance of trial and/or appellate counsel and the fact that he was not assisted by counsel on post-conviction review.  Ineffective assistance of counsel may in some circumstances serve as cause to overcome a procedural bar. See Murray, 477 U.S. at 489 (where ineffective assistance claim has independently been presented to state courts, it may be used to establish cause for a procedural default). However, the ineffective assistance of counsel claim cannot do so if it is, itself, procedurally defaulted.   In such circumstances, the petitioner must first show "cause and prejudice" for the defaulted claim.  Edwards v. Carpenter, 529 U.S. 446, 452–53 (2000).

Review of Mendez's claims asserted in his direct appeal and post-conviction proceedings in state court reflects that he never complained that his counsel was ineffective for failing to object to "other crimes" evidence.  The fact that a petitioner has exhausted other ineffective assistance of counsel claims does not render exhausted ineffective assistance claims based on different facts and theories. See Ogan v. Cockrell, 297 F.3d 349, 358 (5th Cir. 2002); Burns v. Estelle, 695 F.2d 847, 849-50 (5th Cir. 1983); Bruce v. Deville, Civ. Action No. 15-1008, 2015 WL 6440336, at *5 n.33 (E.D. La. Oct. 21, 2015); Evans v. Rader, Civ. Action No. 13-0196, 2013 WL 2154124, at *2 n.13 (E.D. La. Apr. 23, 2013).  Thus, Mendez has failed to exhaust his state court remedies as required under Rose v. Lundy, 455 U.S. 509 (1982), and any attempt to do so in state court at this point would be procedurally barred as untimely under Louisiana

Code of Criminal Procedure article 930.8.[33]  See Mays v. Cain, No. 08–3983, 2011 WL 2295173, at *4 (E.D. La. June 9, 2011) (Lemelle, J.) (quoting Coleman, 501 U.S. at 735 n. 1) (additional citation omitted) ("[A] procedural default occurs when a prisoner fails to exhaust available state remedies, and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'").

The narrow exception created by the United States Supreme Court in Martinez v. Ryan, 566 U.S. 1 (2012), also does not provide cause to overcome the bar to review of Mendez's claim that the trial court erred in admitting "other crimes" evidence.  In Martinez, the Supreme Court held that a procedural bar imposed by state courts "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"  (emphasis added) Trevino v. Thaler, 569 U.S. 413, 417 (2013) (quoting Martinez, 566 U.S. at 13).  In Trevino, the Court emphasized that the Martinez exception also applies when a state's procedures make unlikely a meaningful review of an ineffective assistance of trial counsel claim on direct appeal and defers that review to collateral proceedings.  Trevino, 569 U.S. at 417.

_____

[33] Article 930.8 provides petitioners with two years from the date their convictions and sentences became final timely to seek post-conviction relief.

Mendez specifically claims in his habeas petition that the trial court erred in admitting "other crimes" evidence. As previously explained, he did not raise or exhaust a claim of ineffective assistance of counsel for failing to object to the evidence. Neither Martinez nor Trevino is applicable to Mendez's substantive claim. See Milam v. Davis, ——— Fed. App'x ———, 2018 WL 2171208, at *4 (5th Cir. May 10, 2018) ("Martinez/Trevino allows circumvention of a procedural bar only for claims of ineffective assistance of trial counsel, not a claim that the trial court erred by failing to give a requested jury instruction.") (internal citation omitted), pet. for cert. filed, No. 18-5494, (U.S. Aug. 7, 2018); Murphy v. Davis, 732 F. App'x 249, 259 (5th Cir. 2018) (finding Martinez/Trevino did not excuse procedural default of a Brady or Napue claim).

Martinez and Trevino also do not provide cause to overcome the bar to review of Mendez's claim of ineffective assistance of counsel related to the multiple offender proceedings. Unlike the claims and review procedures addressed in Martinez and Trevino, Louisiana law did not bar Mendez from asserting his ineffective assistance of counsel claim regarding the habitual offender proceeding on direct appeal; nor did it defer meaningful review of the claim to the collateral review process. Instead, the opposite is true; Louisiana law required Mendez to assert his claim of ineffective assistance of counsel during the habitual offender proceeding and sentencing on direct appeal or be barred from review if the claim was later asserted in a post-conviction collateral review.

As outlined above, Louisiana's well-settled doctrine under La. Code Crim. P. art. 930.3, Melinie and its progeny prohibit post-conviction review of challenges to all sentencing errors, including those asserting ineffective assistance of counsel during sentencing and multiple offender proceedings.  State v.Cotton, 45 So. 3d 1030 (La. 2010); State v. Nelson, No. 2010-KA-1445, 2011 WL 9165413, at *1 (La. App. 4th Cir. Apr. 27, 2011); State v. Thomas, 19 So. 3d 466 (La. 2009); State v. Dauzart, 89 So. 3d 1214, 1222 (La. App. 4th Cir. 2012)(ineffective assistance of counsel for failure to object to the failure to file the multiple bill into the record "must be addressed on appeal because sentencing errors are not reviewable post-conviction."); State v. Jones, 80 So. 3d 500, 502 (La. App. 2d Cir. 2011) (same); see also, Wallace v. Cain, No. 06-11271, 2009 WL 3367052 at *14 (E.D. La. Oct. 15, 2009) (claim of ineffective assistance of counsel during habitual offender proceeding must be raised on direct appeal) (order adopting report and recommendation).  Instead, Louisiana law requires that these claims be asserted and considered on direct appeal.  Cotton, 45 So. 3d at 1031 (citing La. Code Crim. P. art. 912(C)(1)); Nelson, 2011 WL 9165413, at *1 (review of ineffective assistance of counsel at sentencing is to be considered on direct appeal since it is not available on post-conviction); State v. Smith, 734 So. 2d 826, 834-835 (La. App. 4th Cir. 1999) (sentencing related ineffective assistance of counsel considered on direct appeal); State v. Burns, 723 So. 2d 1013, 1016-1017 (La. App. 4th Cir. 1998) (same); see also, Cotton v. Cooper, No. 11-0231, 2011 WL 5025311, at *11 (E.D. La. Sep. 14, 2011)

("Sentencing issues, including claims of ineffective assistance of counsel during sentencing, may be challenged in state court via direct appeal."), report and recommendation adopted, 2011 WL 5025295, at *1 (E.D. La. Oct. 21, 2011).

Thus, Louisiana law required Mendez to assert his claims of ineffective assistance of counsel at the multiple offender proceeding on direct appeal. This procedural requirement renders unavailable Martinez's equitable relief applicable to collateral review proceedings. See Williams v. Strain, Civ. Action No. 13-298, 2014 WL 5305634, at *7-8 (E.D. La. Oct. 15, 2014); Hughes v. Keith, No. 12-2841, 2014 WL 67587, at *12-13 (E.D. La. Jan. 8, 2014) (order adopting report and recommendation), affirmed, 647 F. App'x 292 (5th Cir. 2016); Holmes v. Cooper, No. 12-1350, 2013 WL 694073, at *10-11 (E.D. La. Jan. 22, 2013) (direct appeal not collateral review was the petitioner's initial opportunity to raise his claim of ineffective assistance of counsel at the multiple bill proceeding), adopted, 2013 WL 695352, at *1 (E.D. La. Feb 26, 2013).

Martinez itself was clear that its narrow exception applies only when "the State barred the defendant from raising the claims on direct appeal." Martinez, 566 U.S. at 17; cf., Banks v. Workman, 692 F.3d 1133, 1148 (10th Cir. 2012). That simply is not the case here. Unlike the situations addressed in Martinez and Trevino, there were no state laws prohibiting Mendez from asserting on direct appeal his claims of ineffective assistance of counsel during the multiple offender proceeding (or rendering review of

those claims unlikely on direct appeal).  Had Mendez done so, review of the claims would not have been barred under La. Code Crim. P. art. 930.3 and the related case law.

Martinez and Trevino do not undermine the procedural bar imposed upon Mendez's post-conviction claims for ineffective assistance of counsel during the multiple bill proceeding.  Louisiana law did not bar and indeed required him to raise the claim on direct appeal, which he did not do.  The requirement that he assert the claim on direct appeal, and without excuse for his failure to do so, precludes the equitable relief provided in Martinez and does not provide cause to excuse the procedural default of his claims. See Holmes, 2013 WL 694073, at *12.

While not enumerating it as a separate claim, Mendez claimed that his counsel was ineffective for failing to object to hearsay statements by Stein and Yokum in his traverse to the State's response to his application for post-conviction release.[34]  He also claimed ineffective assistance of trial counsel in failing to compel disclosure of the confidential informant or argue the material falsity of statements in the affidavit underlying the search warrants.  He also asserted claims of ineffective assistance of appellate counsel for failure to assert those issues and others relating to the multiple offender proceedings on appeal. However, as discussed below, Mendez's claims of ineffective assistance of trial and

---

[34]St. Rec. Vol. 2 of 6, Traverse to State's Response to Post-Conviction Relief, p. 8,  9/22/15 (dated 9/11/15).

appellate counsel are without merit and do not constitute cause for his default. <u>Romero v. Collins</u>, 961 F.2d 1181, 1183 (5th Cir. 1992).

Mendez has not asserted, and the record does not support a finding, that any factor external to the defense prevented him from asserting his claims in a procedurally proper manner. The record reflects no action or inaction by the State which prevented him from doing so.

"The failure to show 'cause' is fatal to invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." <u>Hogue v. Johnson</u>, 131 F.3d 466, 497 (5th Cir.1997) (citing <u>Engle</u>, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed. <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir.1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681–82 (5th Cir.1977)).

C.    <u>FUNDAMENTAL MISCARRIAGE OF JUSTICE</u>

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the

evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex.1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Mendez has failed to offer any basis for the court to consider his defaulted claims. Mendez presents no clear and convincing evidence that suggests his actual innocence on the underlying convictions or the multiple offender adjudication.  Mendez has failed to overcome the procedural bar to his claims, and the foregoing claims, whether actually or technically exhausted, must be dismissed with prejudice as procedurally barred.

## VI.    STANDARDS OF MERIT REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision " 'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]' " Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S.

782, 792-93 (2001); Hill, 210 F.3d at 485.  The "critical point" in determining the

Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  White v. Woodall, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VII.    <u>EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 4)</u>

Mendez generally alleges that he received ineffective assistance of counsel at trial in violation of the Sixth and Fourteenth Amendment rights when his trial counsel failed to "properly investigate the available defenses prior to taking adverse actions without notice and my consent resulting in unconstitutional forfeiture under La.C.Cr.P. Art. 841 to have the herein claims heard on 'direct appeal.'"[35]  In his state court application for post-conviction relief, he more specifically alleged that his counsel rendered ineffective assistance in failing to prepare for trial, interview and subpoena witnesses, compel disclosure of the identity of the confidential informant, argue the material falsity of statements made in the affidavit underlying the search warrant, effectively move for a trial continuance and file writs and move for a stay based on the state trial court's actions. He also claims his appellate counsel was ineffective in filing an <u>Anders</u> brief rather than asserting specific claims on appeal, including those related to the multiple offender proceeding.

Mendez presented these arguments on post-conviction review.  The state district court held that Mendez's claims were speculative and conclusory and that he failed to prove either that his counsel acted deficiently or any resulting prejudice.[36]  The Louisiana

---

[35]Rec. Doc. No. 3, p. 30.

[36]St. Rec. Vol. 2 of 6, Trial Court Order, 11/30/15, pp. 2-4.

Supreme Court denied relief, applying <u>Strickland v. Washington</u>, 466 U.S. 668 (1984),

and attached the trial court's written reasons for denying the application.[37]

The issue of ineffective assistance of counsel is a mixed question of law and fact.

<u>Clark v. Thaler</u>, 673 F.3d 410, 416 (5th Cir. 2012); <u>Woodfox</u>, 609 F.3d at 789.  Thus, the

question before this court is whether the state courts' denial of relief was contrary to or

an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United

States Supreme Court in <u>Strickland</u>, 466 U.S. at 668, which established a two-part test

for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove

both deficient performance and resulting prejudice.  <u>Strickland</u>, 466 U.S. at 697.  The

Supreme Court first held that "the defendant must show that counsel's representation fell

below an objective standard of reasonableness."  <u>Id.</u> at 687-88.  Second, "[t]he defendant

must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  <u>Id.</u> at 694; <u>United States</u>

<u>v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address

both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim

based solely on a petitioner's failure to meet either prong of the test.  <u>Kimler</u>, 167 F.3d

---

[37]<u>State ex rel. Mendez v. State</u>, 226 So. 3d 1088 (La. 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2016-KH-0962, 9/22/17.

at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105.  Harrington recognized the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."

Cullen, 563 U.S. at 190 (quoting Knowles, 556 U.S. at 123).  This court must therefore

apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.    CONSTRUCTIVE DENIAL OF COUNSEL

Mendez generally suggests that he was constructively denied counsel although he does not expand on this claim.[30]  In United States v. Cronic, 466 U.S. 648 (1984), the Supreme Court held that a defendant may be constructively denied counsel, even though an attorney was appointed to represent him.  Cronic recognized that the performance of

---

[30]Rec. Doc. No. 3 , pp. 29-30.

counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding. <u>Cronic</u>, 466 U.S. at 654 n. 11. The <u>Cronic</u> presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing;" or (3) counsel "is called upon to render assistance where competent counsel very likely could not." <u>Cronic</u>, 466 U.S. at 658-59 (citations omitted). Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found. <u>Mickens v. Taylor</u>, 535 U.S. 162, 166 (2002).

The Supreme Court has emphasized that for <u>Cronic</u> to apply "the attorney's failure must be complete." <u>Bell</u>, 535 U.S. at 697. "For purposes of distinguishing between the rule of <u>Strickland</u> and that of <u>Cronic</u>," the Supreme Court held that <u>Cronic</u> does not apply merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. <u>Bell</u>, 535 U.S. at 697. The distinction between counsel's failure to oppose the prosecution <u>entirely</u> and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." <u>Bell</u>, 535 U.S. at 697. The <u>Cronic</u> standard applies <u>only</u> when counsel has <u>entirely</u> failed to challenge the prosecution's case. <u>Id</u>. at 697; <u>Riddle v. Cockrell</u>, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the

courtroom, there was an actual conflict of interest, or there was official interference with the defense); Mayo v. Cockrell, 287 F.3d 336, 340 n.3 (5th Cir. 2002); Burdine v. Johnson, 262 F.3d 336, 344 n.4 (5th Cir. 2001).

The petitioner has the burden to show that he was constructively denied counsel. Childress v. Johnson, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).  "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel.  Bad lawyering, regardless of how bad, does not support the [per se] presumption of prejudice."  Johnson v. Cockrell, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing Jackson v. Johnson, 150 F.3d 520, 525 (5th Cir. 1998) (quoting Childress, 103 F.3d at 1228-29).

The issue of the constructive denial of counsel under Cronic is a mixed question of law and fact.  French v. Jones, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir. Jul. 18, 2000) (Table, Text in Westlaw).  Thus, the question before this court is whether the state courts' denial of relief on this issue was contrary to or an unreasonable application of United States Supreme Court precedent.

The state courts' denial of relief on this issue was not based specifically on Cronic. Instead, the state court addressed Mendez's ineffective assistance of counsel claims under Strickland based on the actual performance of his counsel.  Mendez has not shown error either in the application of the Strickland standard or that his claims should have been evaluated or would have been evaluated differently under Cronic.  The record does not

41

demonstrate a complete failure by his trial counsel entirely to oppose the prosecution's case.

On the contrary, the state court record reflects that Mendez's retained counsel subjected the prosecution's case to meaningful adversarial testing at each stage. Counsel argued a pretrial motion to suppress[31] and sought disclosure of the identity of the confidential informant.[32] The transcripts of the state court proceedings establish that counsel was fully familiar with the case and adequately prepared to challenge the State's evidence. The trial transcript reflects that Mendez's trial counsel actively challenged the State's evidence throughout the trial. Nothing in this record suggests that Mendez's trial counsel was "inert" in his representation at trial. Jackson v. Johnson, 150 F.3d at 525). Mendez's assertions under Cronic are based on the same reasonable tactical decisions made by counsel that were addressed under Strickland by the state courts and by this court in this report. Counsel's decision not to pursue baseless and irrelevant defenses does not equate to a failure of representation under Cronic. See United States v. Griffin, 324 F.3d 330, 364 (5th Cir. 2003) (no "constructive" denial of effective assistance of counsel or presumption of prejudice where there was no complete absence of counsel, no actual conflict, no state interference, and defense attorney actively participated in the criminal proceedings); see Cronic, 466 U.S. at 657 n.21, 104 S.Ct. 2039 ("If counsel is

---

[31]St. Rec. Vol. 1 of 6, Motion to Suppress the Evidence, 1/31/12; Minute Entry, 11/15/12.

[32]St. Rec. Vol. 1 of 6, Motion for Disclosure of the Identity of the Confidential Informant, 3/4/13.

a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance.").

Mendez has not established that he was constructively denied counsel under Cronic. The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. His challenge to counsel's representation of him before, during and after trial will be further addressed below under Strickland.

B.    FAILURE TO INVESTIGATE, INTERVIEW AND SUBPOENA WITNESSES, EFFECTIVELY ARGUE MOTION TO CONTINUE AND FILE FOR WRITS AND A STAY

Mendez claims that his trial counsel failed adequately to investigate the case. In his state court application for post-conviction relief, he more specifically claimed that trial counsel failed to prepare for trial, interview and call Yokum and Stein to testify, adequately move for a continuance and file for writs and move for a stay when the motion for continuance was denied.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696,

recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  To prevail on such a claim, petitioner must provide factual support showing what <u>exculpatory</u> evidence further investigation would have revealed.  <u>Moawad</u>, 143 F.3d at 948; <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005); <u>Davis v. Cain</u>, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Mendez merely speculates that his counsel did not adequately investigate the case and prepare for trial.  He is required to present more than conclusory assertions to establish ineffective assistance of counsel.  <u>Green v. Johnson</u>, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").  Mendez has identified no exculpatory evidence or favorable witness testimony that would have been discoverable through more pretrial investigation by counsel.  He has not specified what exculpatory information, if anything, further preparation or investigation would have disclosed.

It is not enough for Mendez simply to allege that his counsel should have interviewed and called defense witnesses, Yokum and Stein, to testify at trial.  It is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  <u>Graves v. Cockrell</u>, 351 F.3d 143, 156 (5th Cir.2003) (quoting <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th

44

Cir.1978)); <u>Bray v. Quarterman</u>, 265 F. App'x 296, 298 (5th Cir.2008). To prevail on

such a claim, the petitioner must name the witness, demonstrate that the witness was

available to testify and would have done so, set out the content of the witness's proposed

testimony, and show that the testimony would have been favorable to a particular

defense. <u>Day v. Quarterman</u>, 566 F.3d 527, 538 (5th Cir.2009) (citing <u>Bray</u>, 265 F.

App'x at 298). The Fifth Circuit has "clarified that the seemingly technical requirements

of affirmatively showing availability and willingness to testify '[are] not a matter of

formalism.'" <u>Hooks v. Thaler</u>, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting <u>Woodfox</u>,

609 F.3d at 808).

The only potential witnesses Mendez identified by name were Yokum and Stein.

He claims that Yokum would have testified that Mendez did not keep cocaine for him

and that he was not formally charged. He claims that Stein would have refuted the

detective's testimony that Mendez did not trust her.

Mendez has not met the foregoing requirements necessary to successfully assert

such a claim. He presented no evidence to either the state courts or to this court, such an

as affidavit from Yokum or Stein, showing that either witness was available and would

have testified in a manner beneficial to the defense. Contrary to Mendez's claim that

Yokum would have provided beneficial defense testimony, the record demonstrates that

Yokum told police that he allowed Mendez to store a lockbox at his home and that he had

seen Mendez in possession of cocaine in the past.[33]  Additionally, Yokum was in fact

charged in the same bill of information as Mendez and was ultimately found guilty.[34]

The record additionally demonstrates that trial counsel requested a continuance of trial

to locate Stein, but the motion was denied.[35]  In any event, the record indicates that it is

not likely that Stein would have provided testimony favorable to Mendez.  According to

Detective Clogher, Stein told him that Mendez sold cocaine and that he stored it in a

black lockbox at Yokum's residence.[36]  Mendez offers only self-serving, speculative and

conclusory allegations that Yokum and Stein would have in fact testified and would have

done so in a manner consistent with Mendez's version of the facts.  Therefore, petitioner

has failed to meet his burden of proof with respect to this claim.  See, e.g., United States

v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims

of ineffective assistance of counsel when the only evidence of a missing witness's

testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL

2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009

WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how

such witnesses would have testified; rather, a petitioner must come forward with

---

[33]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 122, 3/13/13.

[34]St. Rec. Vol. 3 of 6, Bill of Information, 1/17/12; St. Rec. Vol. 2 of 6, State's Response to Post-Conviction Relief, p. 10, 9/4/15; St. Rec. Vol. 4 of 6, Trial Transcript, p. 100, 3/13/13.

[35]St. Rec. Vol. 1 of 6, Motion to Continue Trial, 3/1/13; Minute Entry, 3/11/13; Motion for New Trial and for Post-Verdict Judgment of Acquittal, 3/27/13.

[36]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 116-120, 3/13/13.

evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Mendez concedes that his counsel moved to continue the trial to locate Stein but claims that counsel performed deficiently because she failed to explain why the witness's testimony was necessary. The record establishes that defense counsel moved for a trial continuance to locate Stein which was denied.[37] While the record does not include a transcript of the hearing at which the motion to continue was addressed, counsel's choice of arguments to support the motion to continue falls squarely within the ambit of trial strategy. See Taylor v. Maggio, 727 F.2d 341, 347-48 (5th Cir. 1984) ("the failure to present a particular argument or evidence is presumed to have been the result of strategic choice.") Federal courts "will not question a counsel's reasonable strategic decisions." Bower v. Quarterman, 497 F.3d 459, 470 (5th Cir. 2007).

---

[37]St. Rec. Vol. 1 of 6, Motion to Continue Trial, 3/1/13; Minute Entry, 3/11/13; Motion for New Trial and for Post-Verdict Judgment of Acquittal, 3/27/13.

Mendez also faults his counsel's failure to seek writs and move for a stay based on the denial of his motion to continue. Louisiana law provides that a motion for continuance may be granted upon a showing that a continuance is in the interest of justice or if "there is good ground therefor." La. Code Crim. P. art. 712. A motion for continuance based on the absence of a witness must meet certain criteria, including "[f]acts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred." La. Code Crim. P. art. 709. Denial of a motion to continue will not be disturbed absent an abuse of discretion. State v. Washington, 407 So. 2d 1138, 1148 (La.1981); State v. Davenport, 2 So. 3d 445, 447-448 (La. App. 5th Cir. 2008).

Mendez has offered no evidence demonstrating that, had the trial been continued, counsel would have been able to locate Stein and she would have been available to testify. He has failed to show that he was prejudiced by Stein's failure to testify at trial. As explained above, the statement Stein gave to Detective Clogher was incriminating, not exculpatory. There is no evidence that she would have testified differently at trial. Mendez has therefore failed to show that the appellate court would have likely granted a writ concerning the denial of the continuance. See Anderson v. Quarterman, 204 Fed. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); Penson v. Ohio, 488 U.S. 75, 83-84 (1988) (noting that courts

have refused to find counsel ineffective when the proposed appellate issues are meritless).

For these reasons, Mendez has not met the burden of establishing either prong under Strickland. Any denial of relief by the state courts on these issues was not contrary to or an unreasonable application of Strickland. Mendez is not entitled to relief on these arguments.

C.    COMPEL DISCLOSURE OF INFORMANT AND CONTEST RELIABILITY OF STATEMENTS IN THE AFFIDAVIT AT HEARING

Mendez claims that his counsel failed to discover the identity of the confidential informant who purchased cocaine from Mendez as part of the controlled transaction that occurred before his arrest and execution of the search warrants. He further claims that counsel did not "contest the material falsity" of the statements included in the affidavit underlying the search warrants during the suppression hearing.[38]

The record reflects that trial counsel filed a motion for disclosure of the identity of the confidential informant.[39] The state trial court ordered the State to show cause on March 11, 2013, why the motion should not be granted.[40] While the hearing minutes do

---

[38]St. Rec. Vol. 2 of 6, Uniform Application for Post-Conviction Relief, p. 17, 7/17/15 (dated 7/23/15).

[39]St. Rec. Vol. 1 of 6, Motion for Disclosure of the Identity of the Confidential Informant, 3/4/13.

[40]St. Rec. Vol. 1 of 6, Trial Court Order, 3/6/13.

not reflect consideration of the issue, the motion was apparently denied.[41]  The mere fact that counsel's effort was unsuccessful in that the trial court denied the motion does not establish ineffective assistance.  Mitchell v. Leblanc, Civ. Action No. 14-2510, 2016 WL 4474835, at *8 (E.D. La. Feb. 18, 2016), certificate of appealability denied, No. 17-31003, 2017 WL 6276121 (5th Cir. July 5, 2017); Weber v. Cooper, Civ. Action No. 12–1575, 2013 WL 425934, at *12 (E.D. La. Jan. 15, 2013) (citing Baker v. United States, 2011 WL 3841690, *13 (E.D. Va.2011) ("record shows ... counsel effectively advocated on petitioner's behalf ... [t]hus, counsel's actions were effective notwithstanding their lack of success")), report and recommendation adopted, 2013 WL 425879 (E.D. La. Feb. 4, 2015).

Mendez has also not shown that his counsel acted deficiently in failing to seek writs relating to denial of the motion for disclosure of the identity of the confidential informant ("CI") or any resulting prejudice.  When Mendez raised the issue in his application for post-conviction relief, the state trial court found that Mendez was not entitled to disclosure of the confidential informant's identity and concluded that Mendez had failed to show any deficiency in counsel's performance or any resulting prejudice.[42]

---

[41]St. Rec. Vol. 1 of 6, Minute Entry, 3/11/13.

[42]St. Rec. 2 of 6, Trial Court Order, p.3, 11/30/15.

The Louisiana Supreme Court found that Mendez failed to show ineffective assistance of counsel under Strickland and adopted the state trial court's findings as its own.[43]

In the underlying case, the confidential informant provided information to police which resulted in a controlled buy that was observed by police. Mendez's sale of cocaine to the confidential informant, however, did not provide the basis for Mendez's arrest or conviction for possession of narcotics. Rather, the charges in the bill of information were based on the drugs found during the searches of Mendez's truck and Yokum's property. Under these circumstances, Mendez was not entitled to disclosure of the identity of the confidential informant since the transaction involving the CI was not the basis of his conviction. See State v. Smith, 28 So. 3d 1092, 1097-1098 (La. App. 5th Cir. 2009) (defendant was not entitled to disclosure of the identity of the confidential informant where CI was source of the basis of the of the probable cause required for the search warrant but the charge in the case was based on cocaine found when the search warrant was executed and not based on the evidence seized from the controlled buy between defendant and the CI which was personally observed by affiant of the probable cause affidavit). Thus, Mendez has failed to show prejudice resulting from his counsel's failure to seek writs. See Anderson, 204 Fed. App'x at 410; Penson, 488 U.S. at 83-84.

---

[43] State ex. rel Mendez v. State, 226 So. 3d 1088 (La. 2017) (per curiam); St. Rec. Vol. 2 of 6, La. S. Ct. Order, 2016-KH-0962, 9/22/17.

Mendez also claims that his counsel failed at the hearing on the motion to suppress to urge the falsity of statements made in the affidavit supporting of the warrants. Mendez claims that the informant made false statements to police and that Detective Alvarado could not see the controlled buy. The transcript shows that defense counsel questioned the witnesses about the reliability of the confidential informant and whether the exchange of cocaine was personally viewed by police during surveillance of the controlled buy.[44] Detective Clogher testified that he saw the hand-to-hand transaction.[45] Detective Alvardo testified that he determined that the CI's person and vehicle were free of contraband before the controlled buy and that he followed the CI after the controlled buy to retrieve the drugs from him.[46] Defense counsel attempted to impeach the credibility of both detectives.[47] At the conclusion of the hearing, defense counsel argued that the confidential informant was not reliable and that no one actually saw the exchange of drugs.[48] While defense counsel did not specifically argue that the affidavit contained materially false statements, Mendez presents no evidence to support his assertion that any statements were false or made with reckless disregard for the truth. It is not ineffective assistance to urge a meritless motion. See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th

---

[44]St. Rec. Vol. 3 of 6, Hearing Transcript, pp. 12-16, 25-33, 78-82, 11/15/12.

[45]Id., at pp.78-81.

[46]Id., at pp. 19-20, 31-33

[47]Id., at pp. 29-39, 78-81.

[48]Id., at pp. 105-109.

Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); <u>Koch v. Puckett</u>, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."). There was nothing more required of counsel. <u>See</u> <u>United States v. Gibson</u>, 55 F.3d 173, 179 (5th Cir. 1995) (counsel's failure to file motion to suppress based on faulty search warrant affidavit was not deficient performance because counsel is not required "to file meritless motions"); <u>Williams v. Cain</u>, Nos. 06-0224, 06-0334, 2009 WL 1269282, at *12 (E.D. La. May 7, 2009) ("Counsel is not considered ineffective for failing to assert a baseless and frivolous motion.").

The state courts' denial of Mendez's claims was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Mendez is not entitled to relief as to these claims.

D.    <u>OBJECT TO HEARSAY STATEMENTS BY STEIN AND YOKUM</u>

Mendez claims ineffective assistance of trial counsel for failing to object to the trial testimony of Detective Clogham as cause for his procedural bar of his claim that the state trial court erred in allowing hearsay statements of Stein and Yokum to be admitted into evidence in violation of his right to confrontation.

At trial and on direct examination, Detective Clogher testified that he spoke with Stein and Yokum after Mendez was arrested, although Clogher did not testify as to what

either person told him.[49]   On cross-examination, probably in an attempt to create

reasonable doubt as to the owner of the drugs, defense counsel asked Clogher about the

statements made by Stein and Yokum.[50]  In response to those questions, Clogher testified

that Yokum admitted that he found cocaine residue on a counter and that Stein, who had

lied to police about her name and was an admitted cocaine user, told police where to find

cocaine in Mendez's truck and that she had seen a black box in Yokum's bedroom.[51]

On re-direct in response to the prosecution's questions, Clogher testified that

Stein told police that Mendez sold and gave Stein cocaine and that he hid the cocaine in

hidden compartments in his truck.[52]  According to Clogher, Stein also said that Mendez

stored his cocaine in a black box kept at Yokum's residence and that Mendez would

retrieve the cocaine while his buyers waited at Mendez's residence.[53]  Clogher testified

that Yokum told him that he had seen Mendez in possession of cocaine, that he allowed

Mendez to store a black lockbox at his residence and that he knew that there was money

in the box.[54]  Defense counsel did not object to the testimony.  Neither Stein nor Yokum

testified at trial.

---

[49]St. Rec. Vol 4 of 6, Trial Transcript, pp. 83-84, 100, 3/13/13.

[50]Id., at pp. 106-108, 110-115.

[51]Id., at pp. 106, 107, 111, 114-115.

[52]Id., at p.p.115-117.

[53]Id., at pp. 117-120.

[54]Id., at pp. 122-123.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Confrontation Clause therefore prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004) (emphasis added). Crawford indicated that testimonial statements include "ex parte in-court testimony or its functional equivalent- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." Id. at 51 (internal quotation and citation omitted); see generally Bullcoming v. New Mexico, 564 U.S. 647, 658 (2011) (recognizing the Crawford standard as the controlling doctrine of the Court).

Confrontation Clause violations are subject to harmless error analysis. Fratta v. Quarterman, 536 F.3d 485, 507-508 (5th Cir. 2008); Bullcoming, 564 U.S. at 668 n.11. A federal court may grant habeas relief on account of constitutional error only if the error had a "substantial and injurious effect or influence in determining the jury's verdict" and resulted in "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see Delaware v. Van Arnsdall, 475 U.S. 673, 684 (1986) (if the reviewing court determines beyond a reasonable doubt that the error was harmless, then the petitioner is not entitled to relief.). In assessing error, federal habeas courts

55

consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

United States v. Edwards, 303 F.3d 606, 623 (5th Cir. 2002) (citation omitted).

Because the other evidence of Mendez's guilt in this case was overwhelming, introduction of the statements from Stein and Yokum was harmless and Mendez was not prejudiced by trial counsel's failure to object.

The trial testimony established that, as a result of a traffic stop and search of Mendez's vehicle pursuant to a warrant, police located 56.9 grams of cocaine and a bottle containing 16 Viagra pills.[55] The prescription bottle did not have a label and Mendez did not claim to have a prescription for Viagra.[56] The vehicle was registered to Mendez.[57] In the eleven days leading up to execution of the search warrant, police had observed Mendez as the sole operator and, except in one instance, the sole occupant of the vehicle.[58] Mendez appeared extremely nervous at the time of the search of his vehicle.[59] According to Detective Alvarado, Mendez did not act surprised to learn about the drugs

---

[55]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 28-29, 35-36, 75-77.

[56]Id., at pp. 34, 78.

[57]Id., at p. 14.

[58]Id., at pp. 13-14, 18-24, 48-49, 52, 61, 67-72.

[59]Id., at pp. 24, 63, 73.

located in his vehicle; instead, he appeared defeated.[60]  Police located the key to the

lockbox in Mendez's car and Mendez was found to have $1600 on his person.[61]  Before

execution of the search warrant, Mendez was observed leaving Yokum's property and

carrying a white packet.[62]  When Detective Alvarado later told Mendez that they had

found more cocaine in a lockbox on Yokum's property, Mendez asked him how much

more time he would get for that.[63]

Based on this trial record, Mendez has not demonstrated that the statements by

Stein and Yokum had a substantial or injurious effect or influence on the verdict or

caused actual prejudice to him.  Mendez has shown no prejudice as a result of his

counsel's failure to object.  Denial of relief on this issue was not contrary to, or an

unreasonable application of, <u>Strickland</u>.  Mendez is not entitled to relief on this claim.

E.    <u>APPELLATE COUNSEL</u>

Mendez contends that his appellate counsel failed to assign as error on appeal

issues relating to confrontation of witnesses, the identity of the confidential informant

and the alleged falsity of the statements contained in the affidavit underlying the search

warrants and the habitual offender proceedings.

---

[60]<u>Id.</u>, at p. 34.

[61]<u>Id.</u>, at pp. 32, 38, 89, 93, 125.

[62]<u>Id.</u>, at p. 22.

[63]<u>Id.</u>, at pp. 39-41, 57.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right. Evitts v. Lucey, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The Strickland standard for judging performance of counsel also applies to claims of ineffective appellate counsel. Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); Goodwin v. Johnson, 132 F.3d 162, 170 (5th Cir. 1997). To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); Smith, 528 U.S. at 285-86, 120 S.Ct. 746.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal. Green, 160 F.3d at 1043 (citing Evitts, 469 U.S. at 394, 105 S.Ct. 830). On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. Jones v. Barnes, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail. See Anderson v. Quarterman, 204 F. App'x at ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to

raise these issues did not prejudice Anderson."); <u>Penson v. Ohio</u>, 488 U.S. 75, 83-84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); <u>Kossie v. Thaler</u>, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue. <u>Smith</u>, 528 U.S. at 288, 120 S.Ct. 746; <u>Jones</u>, 463 U.S. at 754, 103 S.Ct. 3308.

1.    <u>CONFRONTATION CLAUSE</u>

Mendez argues that appellate counsel should have advanced an argument that the state trial court wrongfully allowed hearsay statements by Stein and Yokum to be admitted into evidence through the testimony of Detective Clogher in violation of his rights to confrontation and cross-examination.

The record does not reflect that trial counsel objected to Detective Clogher's testimony relating to the statements made by Stein and Yokum during their interviews. An objection would have been necessary to preserve error for review on direct appeal. La. Code Crim. P. art. 841 ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."). With no objection at trial, appellate

counsel was not in a position to raise the claim on appeal.  Appellate counsel cannot be considered ineffective "in declining to raise an unreviewable issue." Givens v. Cockrell, 265 F.3d 306, 310 (5th Cir. 2001); accord Weatherspoon v. Cockrell, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011) ("[A]ppellate counsel was precluded from raising this claim because there had been no contemporaneous objection at trial.  Therefore, appellate counsel was not deficient for failing to raise the issue on appeal, and petitioner suffered no prejudice. Accordingly, petitioner's instant claim fails because he cannot show a reasonable probability that he would have prevailed on appeal if the issue had been raised." (citations omitted)), report and recommendation adopted, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); Arceneaux v. Cain, Civ. Action No. 06-3964, 2009 WL 917429, at *10 (E.D. La. Mar. 31, 2009) ("Where appellate review of a claim would be barred due to the absence of a contemporaneous objection, appellate counsel is not ineffective for failing to assert the claim."); Taylor v. Holliday, Civ. Action No. 06–4118, 2008 WL 5146505, at *8 (E.D. La. Dec.4, 2008) (petitioner failed to demonstrate ineffective assistance of appellate counsel when issue was not preserved for appeal).

In addition, although it was not raised by counsel on direct appeal, Mendez himself raised the issue of violation of his right to confrontation based on the admission of hearsay statements of Stein and Yokum through Detective Clogher's testimony.  The unlikely success of the claim had it been raised by counsel is illustrated by the Louisiana

60

Fifth Circuit's denial of the same claim when asserted pro se by Mendez himself. The state Fifth Circuit found that even if Mendez's right to confrontation was violated it was harmless error because there was sufficient evidence, without any reference to the statements of Stein and Yokum, to support Mendez's conviction beyond a reasonable doubt.[64] As discussed above, the evidence establishing Mendez's guilt was so substantial that it cannot be concluded that the Stein and Yokum statements prejudiced Mendez. He cannot now show error on the part of counsel on appeal for failing to raise a meritless appellate argument.  Anderson, 204 F. App'x at 410; Penson, 488 U.S. at 83-84, 109 S.Ct. 346.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law.  Mendez is not entitled to relief on this claim.

2.    IDENTIFICATION OF CONFIDENTIAL INFORMANT AND FALSITY OF STATEMENTS IN THE AFFIDAVIT SUPPORTING SEARCH WARRANTS

Mendez claims that appellate counsel should have argued on appeal that the state trial court erred in denying the motion for disclosure of the identity of the confidential informant and that the search warrant affidavit contained materially false statements resulting in an illegal search and seizure.

As discussed above in conjunction with Mendez's related claim of ineffective assistance of trial counsel, Mendez was not entitled to disclosure of the identity of the

---

[64]State v. Mendez,140 So. 3d 284,292 (La. App. 5th Cir. 2014); St. Rec. 1 of 6, 5th Cir Opinion, 13-KA-909, p. 12-13, 4/23/14.

confidential informant under Louisiana law.  Louisiana's established law provided no basis for Mendez's appellate counsel to argue that point on appeal.  Also as discussed previously, Mendez's claim that his trial counsel provided ineffective assistance by failing to argue the material falsity of statements in the affidavit in support of the search warrants was meritless due to the lack of any evidence demonstrating that the affidavit included false statements.  Such arguments would have wholly lacked merit, and counsel's failure to assert them on direct appeal cannot be deemed either deficient performance or prejudicial, since Mendez has not demonstrated a reasonable probability that he would have prevailed on these issues.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law.  Mendez is not entitled to relief on this claim.

3.   <u>MULTIPLE OFFENDER PROCEEDINGS AND SENTENCE</u>

Mendez claims his appellate counsel was ineffective in failing both to challenge his multiple offender adjudication and argue issues of ineffective assistance of trial counsel related to the multiple offender proceeding.  Mendez claims that his guilty plea to the multiple offender bill was not made knowingly and intelligently because he did not understand English and was denied an interpreter.  He further claims that his trial counsel failed to explain the available options to him and investigate the predicate offense.  Mendez asserts that, had trial counsel investigated, she would have discovered that he

was not advised of his constitutional rights pursuant to Boykin[65] before entering his plea to the predicate offense, therefore rendering the sentence-enhancing predicate offense invalid.

Mendez was charged in a multiple bill as a second felony offender.[66]  He faced a minimum prison sentence of 15 years and a maximum of 60 years at hard labor.  La. Rev. Stat. § 15:529.1(A)(1)(a); La. Rev. Stat. § 40:967(f).  Mendez's counsel was able to secure an advantageous plea agreement with an agreed sentence of imprisonment of 25 years.[67]

Louisiana law requires the trial court to advise a defendant of the allegations contained in the multiple offender bill of information, his right to a hearing, and his right to remain silent.  State v. Haywood, 783 So. 2d 568, 582 (La. App. 5th Cir. 2001) (citing La. Rev. Stat. § 15:529.1).  Under Louisiana case law, a defendant intelligently waives his rights if the record reflects that the defendant was advised of his multiple offender rights by the trial judge and/or his counsel.  State v. Hart, 66 So. 3d 44, 48 (La. App. 5th Cir. 2011).

The record reveals no infirmity in Mendez's guilty plea to the multiple offender bill of information.  Mendez executed a waiver of rights form which advised him of his

---

[65]Boykin v. Alabama, 395 U.S. 238 (1969) (a guilty plea cannot be inferred from silence and must be based on express affirmations made intelligently and voluntarily).

[66]St. Rec. Vol. 1 of 6, Multiple Bill of Information, 5/28/13.

[67]St. Rec. Vol. 3 of 6, Waiver of Rights- Plea of Guilty, 5/28/13.

rights, including his rights to an attorney, to remain silent and to a hearing at which the State would have to prove his multiple offender status, the potential sentencing range as a second felony offender and the negotiated sentence.[68]  In executing the waiver, Mendez acknowledged that he had been provided with the multiple offender bill of information, that he was the person who had the listed prior felony conviction record, and that he had been properly advised of his rights at the time of the guilty plea to the predicate offense.[69] He further acknowledged that he was satisfied with his representation by counsel, that he wished to waive his rights and plead guilty to the multiple offender bill of information, and that he was not forced, coerced or threatened to enter his guilty plea.[70]

During the plea colloquy, the state trial court orally advised Mendez of his rights, and Mendez repeatedly acknowledged that he understood his rights and wished to waive them and enter a guilty plea to the multiple offender bill.[71]  Mendez admitted that he had been convicted of possession of cocaine in Case No. 02-1046 on December 13, 2002, as alleged in the bill of information.[72]  Mendez confirmed that he was satisfied with the assistance provided by his counsel and that his plea was not coerced or forced.[73]  Defense

---

[68]St. Rec. Vol. 3 of 6, Waiver of Rights - Plea of Guilty, 5/28/13.

[69]Id.

[70]St. Rec. Vol. 3 of 6, Waiver of Rights - Plea of Guilty, 5/28/13.,

[71]St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, pp. 6-12, 5/28/13.

[72]Id., at pp. 8-9.

[73]Id., at p. 10

counsel confirmed her belief that Mendez's guilty plea was knowing and voluntary and that the plea was in his best interest.[74]  The state trial court accepted Mendez's plea to the multiple offender bill as knowingly, intelligently, freely, and voluntarily made and sentenced him to the agreed upon sentence.[75]

Mendez now claims that he did not understand what was being said during the plea colloquy and was denied an interpreter.  Louisiana Code Crim. P. art. 25.1 requires that, upon request by a non-English speaking person, the court shall appoint an interpreter after consultation with the non-English-speaking person or his attorney.  "[T]he appointment of a qualified language interpreter based on <u>an adequate showing of a defendant's inability to understand the proceedings in English</u> is within the [trial] court's discretion."  <u>State v. Lopes</u>, 805 So. 2d 124, 128 (La. 2001) (citations omitted and emphasis added).

The record reflects that Mendez never complained of any inability to understand English and never requested that an interpreter assist him at any time during the state trial court proceedings.  It was not until his direct appeal that Mendez asserted for the first time an issue about the failure to appoint an interpreter.  At that time, he did not claim

---

[74]<u>Id.</u>, at p. 12.

[75]<u>Id.</u>, at pp. 12-14.

that he did not understand English; instead, he claimed the trial court erred in failing to appoint an interpreter so "he could <u>better</u> understand what was being said."[76]

While Mendez is a Cuban national, he offers nothing but his own conclusory assertions that he could not understand the multiple offender proceedings without the assistance of an interpreter. There is simply no record evidence of any language barrier that would require the aid of an interpreter. Instead, the record shows that Mendez's English skills were sufficient. He was able to communicate effectively and responded appropriately to the state trial court's questions.[77] The record further establishes that Detective Alvarado testified that he read Mendez his rights in both English and Spanish and that Mendez acknowledged that he understood those rights in <u>both</u> languages.[78] At that time, Mendez advised that he wished to speak with Alvarado and made several statements.[79]

Mendez has not demonstrated that he did not understand the multiple offender proceedings or that his trial counsel was ineffective for failing to request an interpreter. Any such arguments would have been unsupported by the record and clearly lacked merit. Appellate counsel's failure to assert these baseless claims on direct appeal cannot

---

[76]St. Rec. Vol. 4 of 6, Pro Se Brief, 13-KA-909, p. 4, 1/23/14 (dated 1/30/14) (emphasis added).

[77]St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, pp. 6-12, 5/28/13.

[78]St. Rec. Vol. 3 of 6, Hearing Transcript, p. 22, 11/15/12.

[79]<u>Id.</u>, at pp. 22, 24, 38-39.

be deemed either deficient performance or prejudicial, since there was no reasonable probability that these arguments would have prevailed on appeal.

Mendez claims that the State failed to produce evidence that his guilty plea to the offense underlying the multiple bill was knowingly and voluntarily entered. Since Mendez stipulated to the multiple offender bill and waived a hearing, he would have been barred from asserting a claim on appeal that the State failed to produce sufficient proof at the multiple offender hearing. State v. Spellman, 140 So. 3d 751, 754 (La. App. 5th Cir. 2014); State v. Schaefer, 704 So. 2d 300, 304 (La. App. 5th Cir. 1997). Again, his appellate counsel's failure to argue a meritless issue on direct appeal cannot be deemed deficient performance or prejudicial.

Mendez also claims his appellate counsel should have argued on appeal that his trial counsel was ineffective in failing to investigate the predicate offense and determine that his 2002 guilty plea was not knowingly and voluntarily entered because he was not advised of his Boykin rights. Boykin requires articulation and waiver of (1) the privilege against self-incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers. Boykin v. Alabama, 395 U.S. 238, 243 (1969). There is no requirement that the defendant be advised that his guilty plea may be used as a basis to enhance his sentence on a future conviction. State v. Muse, 367 So. 2d 789, 792 (La. 1979).

Because he pled guilty to the multiple offender bill, the state court record contains no supporting documentation concerning Mendez's 2002 guilty plea, other then

67

Mendez's acknowledgment in his waiver of rights form to the multiple offender bill that he was properly advised of his rights before pleading guilty to the 2002 offense.[80] Mendez did not and has not provided any evidence, such as the transcript of the 2002 guilty plea, demonstrating that the plea was entered without an informed waiver of Boykin rights. The Louisiana Fifth Circuit, however, previously addressed Mendez's 2002 conviction and found that Mendez executed a waiver of rights and guilty plea form advising him of his rights and that, when the trial judge questioned him during the plea colloquy, Mendez advised that he understood he was waiving his rights. State v. Mendez, 923 So. 2d 189, 193 n. 16 (La. App. 5th Cir. 2006).

Mendez has failed to show that there was any basis on which to challenge the validity of the predicate conviction. Without such a showing, there is no basis for a finding that his counsel was ineffective for failing to pursue such a challenge. He has failed to demonstrate a reasonable probability of success on appeal had appellate counsel argued a claim of ineffective assistance at the multiple bill proceedings.

For these reasons, Mendez has not established that his appellate counsel was deficient or acted prejudicially in failing to argue these issues on appeal. The denial of relief on this issue was neither contrary to, nor an unreasonable application of, Strickland. Mendez is not entitled to relief as to this claim.

---

[80]St. Rec. Vol. 3 of 6, Waiver of Rights - Plea of Guilty Multiple Offender - La. R.S. § 15:529.1, 5/28/13.

Considered as a whole, Mendez has not demonstrated any deficient performance on the part of his appellate counsel or shown any prejudice caused by counsel's failure to assert these meritless and unsupportable claims in his appeal.  He has failed to establish that his counsel on appeal provided ineffective assistance under the <u>Strickland</u> standards. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief.

VIII.    <u>APPOINTMENT OF COUNSEL</u>

In his final claim, Mendez suggests that he is entitled to relief because the state courts did not provide him with assistance of counsel to develop his claims further.  In <u>Martinez</u>, on which Mendez relies, the Supreme Court reiterated there is <u>no</u> constitutional right to counsel on post-conviction review.  <u>Shank v. Vannoy</u>, No. 16-30994, 2017 WL 6029846, at *1 (5th Cir. Oct. 26, 2017).  Nothing in <u>Martinez</u> requires that Mendez be provided with post-conviction assistance of counsel in the state courts or this federal court to develop his claims further.  He is not entitled to relief of this kind.

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Mendez's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[81]

New Orleans, Louisiana, this _____10th_____ day of September, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

[81]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.